May it please the Court, I'm David Ross-Miller here on behalf of Campbell Global and Bascom Southern. My partner, Lisa Boyd, is here as well. Try to keep your voice up, would you please? Yes, I'm sorry, Your Honor, yes, I will. There are four issues of, we've signed four errors to the District Court, but I think that it would be best if I just deal with two up front because that really decides the most of the matter, if not all of it. And what we have here is what we're asking the Court to do is that the District Court on cross-summary judgment motions found for the insurers and denied our motion for summary judgment. We are asking that the Court reverse the District Court on its grant of summary judgment to the insurers and grant summary judgment to us, Campbell and Bascom, for all the damages in the underlying arbitration award. So, what the District Court, there's two main assignments of error that really explain everything here. But the one, the first one is that the District Court incorrectly read the arbitration award and said the arbitration award doesn't say anything about negligence. There's nothing in there about negligence. There's no negligence standard, no tort standard mentioned. And yet— He thought it all arose out of breach of contract. That's what he said. Why was he wrong about that? Because it's, that is a very good question. Let me just answer it this way. This lease began in 1968. The lease says nothing about, except that it should be returned in good condition. But what is good condition? The arbitration award cited that there were violations of, quote-unquote, best management practices and good management practices. Those are defined nowhere in the lease. They're not even in the lease at all. And there's a very good reason why those standards weren't mentioned, best management practices are not mentioned in the lease. Let me ask you this, Mr. Rossmiller. Are those good practices, the good management standards, incorporated in statutes of the state that spell out that a violation constitutes a tortious injury to the person injured? The answer to your question is yes. Where? What statute says that? Yes, in a way. So, yeah, but it's not a statute like a criminal violation. But the... No, no, no, no. Yes. I'm not asking whether it's a criminal violation. Yes. Put that to one side. This is not a criminal case. Yes. Where in the legislation on which you rely is the matter of guidelines of good practices made to be a mandatory duty by a member of the society as to the property owner? Well, it's a duty that's a community industry standard promulgated by the Alabama Forestry Commission. And that's why, Your Honor, that it's not mentioned in the... Is there a statute in Alabama that adopts the guidelines as being mandatory duties for civil property liability? There's a statute that created the Alabama Forestry Commission, which guides all the forestry... I'll try once again. Can you cite me a statute which incorporates the guidelines as a mandatory duty, sounding in tort? No. The answer is no. Right? No. Okay. Thank you. Now, secondly, is there anything which indicates that the guidelines are incorporated in the contract? Are they incorporated in the contract? Those are outside the contract. Because they were adopted after the contract was signed. Well, yes. And we know that because the contract, the original lease with American Can, the predecessor to Bascom, was in 1968. The Alabama Forestry Commission, which tells us what best management practices are, was not created until 1975. Well, it seems reasonable to expect that the industry standard, whatever was going to be good condition, might have been a moving target, or at least an evolving target. It certainly is evolving. Yes, we know that. Right. But how are you, I'm still trying to get to tort. The district court still looked at this and thought all of the obligations arose out of breach of contract, not tort. And it seems to me your much stronger argument that I'm really puzzling over is that the arbitrators, not looking at the lease, the district court was looking at the arbitration agreement, and he said the arbitrators recognized there are several tort claims, dismissed them all except negligence, and then I think if I read, and I'm anxious to hear what your opposing counsel has to say about this, there's no direct ruling on the negligence claim unless the arbitrators intended to resolve it the same way with the breach of contract. I think it would just be left dangling. Well, that's an interesting observation, Your Honor, because they said we are dismissing these intentional tort claims, wantonness, nuisance, trespass, and so forth. And as to the remaining claims of negligence and breach of contract, we find as follows, is what they said. Right. So do the – so can I just interrupt, if I may? Do they ever dismiss the negligence claim? No, they did not. So to reach the district court's conclusion, what we'd have to say is that these arbitrators, which included a judge and professional foresters, just in the span of five pages, it's only a six-page arbitration award, just forgot to mention those – these negligence claims. It's odd. It's peculiar. And I want to put you both on notes. For my vote, just speaking for myself, that is the biggest problem I've got with this. On the other hand, the conduct we're talking about doesn't sound accidental or negligent. It's years and years of – this is my – these are my words, paraphrasing, to be sure, but it's many years of mismanagement, many years of intentional decisions that were made and how the farm was – or forest was managed. And so what do we do about that? Well, what we do about that is we look at the decisions, like, from the Oregon Supreme Court, like Kissel, 1972. This has been recognized for a long time in Oregon law. To have – and the Oak Crest case as well – to have these – for something to be intentional in a legally significant way, you have to actually intend the result, not just do an intentional act. Many of these construction defect claims, obviously the person who nailed up the – put an incorrect number of nails in the siding intended to do that, but it was negligent. They misinterpreted what they were supposed to do. Yes, but in this case, the arbitrators don't help you there either, I don't think, because they said, we're not imposing punitive damages, but they did find, I think, more than negligence in terms of egregiousness of conduct here, right? No, they didn't, because the wantonness includes reckless conduct, and they dismissed that claim. Yes, but they made a comment about the – your client's comment that went beyond negligence. Are you talking about that it was performed in bad faith? Is that what you were saying? I think they make an express bad faith finding. I just didn't want to say that into the record if I'm misspeaking, so I'm going to just check quickly, but I think they did. It's ER 1302, number 7A. Hang on, let me – if I can get to you, ER. Yes, there it is. Right. Beyond negligence. Well – So what about that? Well, they – I mean, just in terms of – I'm getting back to my initial question, which is that I think the district court looked at this course of conduct not as accidental or negligence, but more egregious and certainly very protective, very long-term lease, right? Well, there was a disagreement about – we know that they spoke, the Gray family and Campbell and Bascom, but there was a disagreement over what actually the best management practices or good management practices constituted. Now, the arbitrator said actually they weren't awarded all the damages the Gray saw, so it wasn't – Okay, but was it four years earlier? Gray's – I think it's four years earlier. Gave him a letter indicating, hey, you know, you have a duty in four years to return the property in good condition, and here's all the reasons we think it's not in good condition, and I think those were not remedied, right? Well, the testimony is that they did go back, Mr. Rourke and others did go back, and they did think they were remedying some things, and they thought that other things were in – were consistent with good management practices. Okay, but they lost. The arbitrators disagreed with them. Well, people lose lawsuits all the time. We see that. I'm an insurance lawyer, and yes, there's negligence that happens all the time. Okay, but we're not going to revisit the arbitrator's findings, and neither did the district court. We're just trying to figure out what they meant and interpret the award. Right. So I'm struggling, and I don't want to take up all your time. I'm struggling with the first finding the district court made that you're challenging, which is the finding that – or conclusion, I guess, that all of the arbitrators' damages arose from contract. You said there's a second issue you wanted to raise? Certainly, and that one – and I would like to review – reserve a few minutes here, if I could, for rebuttal. This one is much more straightforward and easier because it just deals with a little bit of language and an absolutely crystal-clear decision from the Oregon Court of Appeals. And that is this issue of – there's $907,000 of attorney's fees that were awarded between the Grays – to the Grays pursuant to the lease in the arbitration. And there is a – the pre – the insurers have admitted that all their policies are potentially – we're defending here. They've said that. That's in that June 21st, 2016 letter. Their policies were all defending. The policies that are before November 2008 say, if we defend you, we will pay costs taxed against the insured. It does not say why they're defending you or that there has to be – what type of liability has to be found or that there's any other condition except that if they defend you, we will pay costs taxed against you. And the Hunter's Ridge case is exactly the same thing. The general contractor, White, suing the subcontractor to WGC, attorney's fees awarded against WGC to the general contractor. Hunter's Ridge, exact same language. It's not the exact – it's the exact same language. It is the exact same language. So here's my problem. The language is exact, but it's a different circumstance. So could you – here's – if you can cut to the chase for me. Yes, ma'am. This case, unlike Hunter's Ridge, involved a duty to return the – sorry – premises in good condition on a specific date. So I'm thinking of this as sort of the breach occurred, you know, at midnight on the day the lease expired on that date, right? And yet there are years and years and years of insurance policies. I'm trying to figure out how those are implicated. Because if you look at the Fountain Court decision from the Oregon Supreme Court, every policy is implicated where property damage was happening during that policy year. But we don't have anything in the arbitrator's award that indicates to us that this property damage was accumulating over time or over what time it would have been accumulating because you have a line in the sand on these policies arguably between 2008 and pre-2008. So what do we do about that? There is abundant testimony from the arbitration which was submitted into the record. Well, the arbitrators didn't make a finding about this, sir. Well, that is what they considered to make the award. There's a lot of things they didn't say, but they didn't list every single instance of when it occurred. Okay, so just walk me through your theory about why I don't need to be concerned about the lease expiring on a particular day unlike the other cases. Because as the insurers have admitted in their letter of June 21, 2016, it is not when the damage is fixed, but when the event occurs and when the damage occurs. That's what triggers the policy. I appreciate that, sir. I appreciate that. So where do the arbitrators make findings about when these, and there are many of them, different defects about when they arose, when they occurred? They went from the testimony, they could only go from the testimony that they had in the arbitration which said that this, we're talking about 56 stands of trees planted from 2001 to 2013. That's the testimony they heard. Well, they also had heard testimony, again, I don't mean to argue with you, but they also heard testimony presumably from your witnesses that there wasn't any damage at all. I don't know what they found. Nobody said that there wasn't, that these conditions didn't exist. There was a disagreement about whether they constituted a violation of best management practices and whether they constituted a tort. There was testimony, I think, especially about the roads and the ruts and the erosion, that that was perhaps exacerbated in the last few years when there wasn't sufficient supervision over contractors working in the area, wasn't there? There may have been testimony on that, but I'll tell you what, that it's not our burden to specify exactly when all the damage happened. If the damage, if there's testimony and evidence showing, which we've submitted into the record, both in the trial court and here, that the damage was a continuing loss, a progressive loss, it is the insurer's burden, not ours, to segregate that into different years. I'm just struck that you're now going quite beyond the briefing or argument that we really have in this court, and this is something that the district court didn't reach. No, in fact, we've briefed this both here and in the trial court. Not the argument I just raised, sir. Oh. No. Okay. Say it again, would you, then? I'm sorry if I didn't respond to it. I don't want to take any more of your time. That's all right. We'll give you a couple minutes for rebuttal. All right. Thank you. Good morning. May it please the court, I'm Dan Lindahl, representing the appellees, the insurance companies in this insurance coverage dispute. Acting in bad faith and with the intent to get by as cheaply as possible, Campbell and Bascom breached their contractual duty to return these forest lands in good condition. As a result, they were assessed damages by the arbitration panel. Campbell and Bascom now seek to have their insurers assume financial responsibility for the deliberate actions that Campbell and Bascom took in mismanaging this forest land. These policies don't cover this type of liability, and accordingly the district court's judgment in finding no coverage should be affirmed. Now, as the court has seen, there are many issues that the plaintiffs have to prevail on before they get to coverage. The district court only decided one issue, and that's, we've talked about it a little bit this morning, and that's the question of what did the arbitrators decide? Did they find liability based solely on breach of contract, or did they also find liability based on a tort theory, namely negligence? And I want to go to paragraph 6 in the arbitration award. That's the key paragraph. That's where the arbitrators impose liability, and what do they say in paragraph 6? Could you give me one minute? Absolutely, Your Honor. I'm just going to try to get to where you are. I can tell you it's at ER 1300 and 1301. Okay, thank you. Yeah. So what do they do there? The key paragraph. They say, very simply, these parties, Campbell and Bascom, I have to decide how I want to refer to them, the insureds, the plaintiffs. But in any event, the plaintiffs leased this property. They had an obligation to return it in good condition. That's right out of the contract.  That's a finding of breach. And the failure to do so caused damage, period. That's it. Paragraph 6 makes no reference to any duties independent from the contract, any obligations independent from the contract. Mr. Lindahl. Yes, Your Honor. ER 1300 has to claim its remaining claims for negligence and breach of contract. Doesn't that invoke a tort standard? The arbitrators refer to the negligence claim, but they don't seem to address it. They only address it. They deny your motion trying to knock it out, but they dismiss the other tort claims, as you know, as we just discussed, of course you know. So what about that? Is it your theory they didn't rule on it? I think that's right, Your Honor. They didn't have to and they didn't. They didn't rule on the tort theory. There's nothing in there to indicate that they ruled on it one way or another. Now, perhaps if it had mattered to the property owners, they could have gone back and said, well, arbitration panel, we have a gap here. Would you fill that in? They didn't. So what we have is what we have. And then there are, in paragraph 7, I think, there are references to best management practices, and that's what the insureds sort of hang their hat on, that, well, we must have been talking about tort duties here because best management practices are an independent tort duty. Whether that's true or not is. It could also be a definition of what constitutes good cause under the written contract. I didn't find that persuasive, but I'm pretty concerned about this dangling undismissed negligence claim. And you think the best, your theory is, I'm not trying to belabor the point, your theory is they didn't rule on it. Yes. I can't stand here and say it's clear that they ruled against it because that doesn't appear, nor is it clear that they ruled in favor of it. What's apparent is that they didn't rule on it. They found it sufficient to deal with the breach of contract theory, and that's what they ruled on. Well, then what do we do with the district court's ruling on the coverage issue? What he decided is that they ruled solely on contract. And even you're not arguing that. Well, it's a fairly, I'm not arguing that if we read the district court's decision as they ruled in favor on contract and against on negligence, but I don't think that's what the district court ruled. I think what the district court ruled is that the arbitration award made one finding of liability, and it was a breach of contract finding. And the judge didn't get into, frankly, the other issue of what happened to the negligence claim. I don't, at least I didn't understand his decision to be that way. It was where I look at paragraph six, I look at what the arbitrators recited, and I find that it is solely a breach of contract finding. Okay. Based on the arbitrators referring to the contract language as, quote, lands, unquote, in, quote, good condition, unquote. Right. In that dispositive, that critical paragraph six. Now, I want to jump to, and I've already made pretty clear, as I said, there are a lot of issues here that the plaintiffs have to prevail on to get to coverage. The district court only got to one of them. So there is a question about what this court does if it disagrees with the district court's conclusion. And it's our view that the court should adhere to its usual practice of remanding back to the district court to weave its way through all these issues. However, as Judge Kristen has already identified, there is a very simple dispositive issue that resolves all the coverage questions, and which this court can and should resolve. And that is the question of whether what we have here is our damages awarded by virtue of an accident. The threshold question for coverage is whether there is an occurrence. Occurrence is defined as an accident. But it also is a prolonged exposure to a condition. But it, including. And it's not an accident like forehead-slapping oops. It's not that. It's a different definition here. Right? What do we do about that, the prolonged exposure language? You know what I'm referring to. I do. But it's an occurrence including a prolonged exposure to. So it still has to be an accident. Accident including prolonged exposure. Sure. So I think that defines accident certainly more broadly and in an insured-friendly way than we see in other contracts. But still you have to start out with the question, did the insured engage in an act so certain to cause the particular kind of harm that occurred  If that's true, it's not an accident. And what here did these insureds do that was accidental? They knew. They chose because it saved them money to plant these first-generation seedlings rather than second-generation seedlings. They chose to abandon road maintenance. They chose to abandon repairing skid trails. They chose to plant the trees the way they did. Forgive me for interrupting, but some of the planting decisions I'm putting in a different category because the opposing counsel's argument is that in the applicable law here is that intentional consequences can still be accidental if the results are unforeseeable or unexpected. And so planting crops seems to me to be really different than the problems with the roads and the erosion. Do you see what I mean? Because I'm not sure what's unexpected or unanticipated about failing to maintain roads or failing to maintain those aspects of the farm. I do understand your point, Your Honor. And I think our position is with the planting, it was just as inevitable, and that's the word I sort of keep coming back to. It was just as inevitable. These trees were going to grow the way they grew because of the way they were planted. Right, but it seems to me that there's room for maybe for disagreement about what is or is not a sound practice or the best practice for purposes of making this good condition finding. Maybe room for disagreement there about those kinds of planting decisions. And it seems to me the erosion control and the road maintenance are really quite different. I'm not sure where there is room for dispute about those other things. Okay. I understand your point. I don't, at least the way I understand the record, I don't understand that. I mean, I know the position they took down in Alabama, and we did nothing wrong and it was all great. Arbitrators plainly vehemently disagreed with that. The arbitrators made a bad faith finding. They did. Which, you know, really goes to this issue we're talking about right now is, you know, is this a situation where, you know, the trees were damaged or the roads were damaged because, you know, they accidentally applied the wrong fertilizer and it killed trees, or they set a fire and it burned down some trees. It's not that kind of thing at all. These were deliberate choices done for the express purpose, to cut corners and to get by as cheaply as possible. That's what the arbitrators found, and that's what happened, and that's not accidental. But, you know, Your Honor, I want to sort of put a finer point on this. Some of these issues are, I agree, they're not all the same. There's some nuances, including, for example, is there property damage and which of these categories of damages are property damage within the meaning of the policy and which are not. And so that's, you know, why, frankly, I stand here and say, you know, if I can't persuade you that there is no coverage because there's no occurrence, then I think, you know, the course is to remand it back to the district court to address these I don't know how many issues there are. I mean, for example, we believe there's three exclusions that apply. But the district court didn't reach those. Correct. And none of those were reached. And, I mean, you know, we have a 1,400-some-odd-page record, and that's just the excerpt of record. I assume the plaintiffs disagree with that point of view, but Mr. Rossmuller can elaborate on that. Are you asking us to remand? Excuse me? Are you asking us to remand? I'm not asking you to remand except in this circumstance. I mean, the district court reached the one issue. If you disagree with the district court on that issue, then I say alternatively. Okay, I've got you. There's no occurrence. Let me ask you another question. The best management practices, are they incorporated into the terms of, quote, good condition by the custom and practice that obtained at the time the land was turned back? Did the arbitrators err in not adopting those standards? The way I understand the best management practices, and, again, the record is not as robust as it might be on a lot of these issues, which doesn't fall on the insurers. It falls on the party attempting to establish coverage. But the way I understand the best management practices is that it informs the decision about what are good conditions. It's a reference point. It's sort of like this is evidence of what would be good conditions. Is custom and practice evidence? That's a fair, I think that's a fair characterization, Your Honor. And so there wasn't a finding of a violation of tort. So we're going back to issue one here. There wasn't a tort finding based on the violation of an independent duty, but instead a finding of a breach of contract, and evidence of the breach was you folks are doing things that haven't been done in years. You're doing things you don't even do on your own property. I think that's a persuasive argument. I think that's a persuasive argument, that those forest standards really went to what is or is not good condition as a matter of contract. But I don't know where you've landed on this negligence claim. I think you've agreed that it wasn't expressly ruled on by the arbitrators. They didn't dismiss it at least. I agree, Your Honor. I can't argue with that. Circling back, I'm not sure I've heard the answer to Judge Bea's question. Are you asking us to remand on them? It didn't matter in the arbitrators. I get that because they'd found what they'd found regarding liability. So it would have been built in suspenders. But it matters a lot in the coverage dispute. So what are you asking us to do about this? Well, on that point, we can't go back and re-litigate the arbitration. It was decided they found what they found, and Judge Mossman was correct. There's one basis for liability. It was breach of contract, and parties agree. Under Oregon law, breach of contract does not give rise to insurance coverage. So I think what you're asking us is to decide that the arbitrators dismissed all the other tort claims, left the negligence claim dangling, even though they left it dangling. It says, as to negligence and breach of contract, and then it continues. And you construe that as them only relying on contract. So you want us to affirm Judge Mossman's ruling that this damages award only arose out of breach of contract? Yes. Okay. Thank you very much. I think you're out of time. And I am out of time. If there are any questions, I'll answer those. Otherwise, thank you very much. Counsel, you have two minutes. Thank you, Your Honor. It's important that I get this across about the attorney fee provision in the supplementary payments. It is not, despite what the insurers said, it is not a provision that is dependent on the type of award that is given, nor is it dependent on anything else except did the insurer defend and were costs taxed in the sense that the Hunter's Ridge Court has found were they assessed, and they were. Tax costs to me when I was trying cases did not include attorney's fees at all. The Hunter's Ridge Court disagrees with you respectfully, Your Honor, and says that that is ambiguous and that in the pre-night 2008 policies, which are exactly the same as the Hunter's Ridge policies, it is costs tax attorney's fees. They consumed it against the drafter. Yes. But we have, that's true of the pre-2008 policies. So give me your best shot at why the post-2008 policy should apply here, please. They wouldn't apply to that, but all that has to happen is one policy has to be implicated for the defense, and we know the insurers said in their letter, their reservation of rights letters during the lawsuit that they were defending under all policies, including the pre-2008. So, therefore, the $907,000 is totally separate from this question that you've been talking about with counsel. So what about their other argument, which is that they're treating it like a statutory amendment, and they're saying that this really just clarified, the post-2008 change in policy really clarified what we intended all along. We never did cover. What about that? Oregon has the objective theory of contracts. Undisclosed intent or something that you say six years from now about what you meant now does not affect the benefit of the bargain that you and I enter into at this moment. That's what I would say about that. And there is no warrant under Oregon law for that whatsoever. So could I answer any other question? One thing, if I could just point out something, I could agree with the insurers on two things they said. On page four of their answering brief, they said the best statement of the damages that were awarded and the best statement of what the Grays were asking for is in the arbitration complaint, and it listed all the complaints they had. The trees weren't right. The roads were washed out. The boundary lines were wrong. The creeks had sediment. Those are, in fact, the things that the arbitrators awarded on. Page four of the answering brief, they said it's the best statement of what the Grays were asking for in negligence. Their negligence claim, that is what the award was from the arbitrators. I think you've gone past your time, Mr. Rasmussen. There's one thing that I must say here, because counsel just said that there's no way that you can interpret this to say that negligence was awarded. I would agree with the insurers what they said before. They just said that. When they said in their ER 176, in their response to Campbell's motion for summary judgment, I quote, the arbitration expressly found damages were owing for both the breach of the lease and negligence. I agree with them on that. Thank you. Thank you very much, counsel. The case of Campbell Goebel v. American States Insurance Company is submitted, and the court thanks counsel for their argument.
judges: Farris, Bea, Christen